| 98 | 561 |
| s98 | 570 |
| 98 | 572 |

## Staunton.

BRECKINRIDGE AND ANOTHER v. BRECKINRIDGE AND OTHERS.

SEPTEMBER 22, 1898.*

1. WILLS—*Executor's Account—Taxes—Debts Incurred by Life Tenant and Trustee Under Will—Case in Judgment.*—A testator devised his estate, real and personal, to his wife for life, but requested her, at her discretion, to make suitable advancements to his children as they became of age, or married. He directed that, at the death of his wife, so much of his estate as remained in her hands should be equally divided amongst his children, taking into consideration advancements made to them. She kept the property together and managed it for the benefit of herself and children for a number of years, and then the property was divided amongst the children, on the basis of a partition reported to court some years before, but never acted on. While the whole was in the possession of the widow, taxes accrued on the property, and certain debts were incurred by her in the management of the estate, which taxes and debts were paid by the executor. No objection was made at the time to the payment of said debts and taxes. This suit was brought thirty years afterwards.

  *Held:* 1. Under the facts of this case, it was not error to credit the executor by the debts and taxes so paid as aforesaid. It will be presumed that what was done was the result of a family arrangement.

    2. Advancements made by the widow to one of the children who died in her lifetime, intercept to that extent the rights of the issue of such child.

2. PRINCIPAL AND SURETY—*Trust Deed.*—Where three parties unite in a deed of trust, conveying their joint property to secure a debt, which is afterwards ascertained to be the debt of only two of them, the third party should be treated as the surety of the other two.

*Recently directed to be reported.

3. EXECUTORS—*Accounting—Debts to be Charged Against Executor—When Estate Liable—Burden of Proof.*—A bond, note or account may, on its face, appear to be the personal debt of an executor, and yet, in truth and in fact, be the debt of the estate. The presumption is that the face of the paper discloses the true debtor, and the burden of proof is on him who controverts the fact; but if the debt has been paid by an executor, and he can establish the fact that it is not his personal debt, though it so appears on the face of the paper, but is, in truth and in fact, a debt of the estate, he should be allowed credit for it.

Appeal from a decree of the Circuit Court of Botetourt county, pronounced June 7, 1897, in a suit in chancery, wherein the appellant, Nannie B. Robertson, was the complainant, and the appellees and others were the defendants.

*Reversed.*

The opinion states the case.

*William A. Glasgow, Jr.*, for the appellants.

*W. B. Simmons* and *Benjamin Haden*, for the appellees.

KEITH, P., delivered the opinion of the court.

This case is before us upon an appeal from the Circuit Court of Botetourt county, rendered in a chancery suit brought by Nannie B. Robertson and J. Gilmer Breckinridge, the only heirs at law of Gilmer Breckinridge, deceased, a son of Cary Breckinridge, Sr. The object of the suit is to construe the will of Cary Breckinridge, to have a settlement of the accounts of his personal representatives, and a division of his estate.

Cary Breckinridge died in 1867, having first made his will by which he disposed of a large estate, real and personal. By the first clause of his will, he directs his debts to be paid, and to that end charges certain mill property, a tract of land known as Keon's place and Thompson's Ridge, as the primary fund for their payment instead of his personal estate.

By the second clause of the will, he gives the residue of his estate, real and personal, to his wife, Emma W. Breckinridge, during her life, and then says: " It is my wish that she shall, at her discretion, make suitable advancements to my children, as they arrive at the age of twenty-one, or marry, charging such one with such advancements as he or she may receive at valuation to be made at the time in such manner as my executors may direct. After the death of my wife, I wish all my estate, real and personal, that may be in her possession at the time of her death, equally divided among my children, each one accounting for any advancements received, either from me or from my wife. If any of my children should die during the lifetime of my wife, without leaving a child or lineal descendant, I wish the portion of my estate to which such decedent would have been entitled, divided as before mentioned, among my surviving children, and the children or lineal descendants of such as may have died leaving any; the representatives (as above mentioned), of any of my children who may die taking such part of my estate as my said children would have been entitled to if living."

He appointed his wife, Emma W. Breckinridge, executrix, and his sons, Peachy G., James, and Cary Breckinridge, as they respectively attain lawful age, his executors. The widow and Cary Breckinridge qualified, and the latter assumed the actual burden of executing the will.

A motion was made in the County Court of Botetourt county to have commissioners appointed to divide the lands of Cary Breckinridge among his devisees, and at the June term, 1868, the commissioners appointed for that purpose made their report. This proceeding, however, was never perfected, and was subsequently dismissed, but those interested appear to have entered into the possession and enjoyment of the shares allotted to them, and by a deed dated the 31st of December, 1883, the devisees of Cary Breckinridge undertook to carry into effect that report.

This deed was signed by all the parties in interest except Mrs. Mary A. Woodville, a daughter of Cary Breckinridge, who had removed to West Virginia, who, while she did not sign the deed, appears to have entered into the possession of the share allotted to her by the report of the commissioners. Cary Breckinridge settled no account until July, 1882. When this suit was brought and he was called upon to settle his accounts, he says in his answer that he is willing to have a commissioner to examine and correct his accounts as executor, so far as they need reformation, and admits that in it there are some errors and omissions; and the court entered a decree directing a commissioner to settle "an account of the personal representatives of Cary Breckinridge, Sr., deceased, and said representatives are hereby directed to render said accounts before said commissioner, and especially to lay before him the evidences of debt and vouchers for the disbursements mentioned in the *ex parte* settlement heretofore made by them, and referred to in the bill." When this account came in, exceptions were taken to it, and it is from the decree of the Circuit Court passing upon these exceptions that this appeal was taken.

In so far as the executor paid taxes due by the testator at his death, and the debts which he then owed, there is, of course, no exception taken to his accounts. The commissioner, however, has given the executor credit for taxes paid by him upon the estate of Cary Breckinridge, which accrued after the testator's death, and for debts which it is alleged were contracted, not by the testator, but some of them by his widow, in the management of the estate as life tenant, by his son, G. W. Breckinridge, and by Cary Breckinridge, the executor. The account of the executor is made up of a great number of items. The evidence upon which the account is based, oral and written, is chiefly that furnished by the executor himself, and the account appears to be in conformity with that evidence. From the testimony of the executor, it appears that the taxes paid by him upon the

life estate in the hands of the widow were paid with the approbation of all parties in interest. Certain it is that there is no evidence of protest or objection from any quarter whatsoever, and while not strictly within the line of his duty as executor, it would be a harsh ruling which would now hold the executor personally responsible for payments made in good faith thirty years ago and not objected to at the time; and, which, as far as the record shows, were not only acquiesced in, but approved, by all who had any interest in the subject.

The powers of the widow under the will were extensive. It is sought to place her now in the position of a mere life tenant of an estate held solely for her own benefit, and occupying, as it were, an attitude of antagonism to those in remainder. Such was not the fact. She was, while the life tenant in name, really a trustee under the will, holding the property for the benefit of her children. She was their mother, and took this property with the trust confided to her by her husband that she would make advancements out of it as their necessities might require, and as her discretion might approve; and so we find, at an early date, proceedings instituted looking to a division of the estate among those entitled; and while that proceeding in the County Court was never perfected, it was made the basis upon which the lands were divided among the children, in accordance with their respective interests. The will gives to her, subject to the payment of debts, his whole estate, real and personal, during her life, but it is charged with the trust that she should make "suitable advancements to the children as they became twenty-one years of age, or married," and at the death of his wife, the period fixed by the will at which the estate was to be finally settled, he directs that "all his estate, real and personal, that may be in her possession at the time of her death, be equally divided."

It was contended in argument that, inasmuch as Mrs. Woodville died during the lifetime of her mother, her children took

a vested remainder under the will, and that they cannot be affected by any act of the life tenant; but this view leaves wholly out of consideration the power and duty of the widow to make advancements, in her discretion, of the whole estate, and of the fact that the share of Mrs. Woodville was in a large measure advanced to her during her lifetime, which, of course, intercepted any right upon the part of her children.

Parties cannot be permitted to stand by and see an executor deviate from the path prescribed to him by the will and by the law, in the manner and under the peculiar circumstances disclosed by this record, and then years afterwards, when it is impossible to restore him to the position which he would otherwise have occupied, undertake to impose upon him a liability for his acts done with their acquiescence. It will be presumed that, in a case like this, what was done, was done as a result of family arrangement and agreement.

We are of opinion, therefore, that there was no error in allowing the executor credit for taxes accruing upon the estate in the hands of the widow, and upon debts contracted by her in the management of the estate prior to its practical distribution among those entitled.

Another subject of controversy in the Circuit Court was as to the Figgat debt, which was secured by a deed of trust. That deed of trust is a valid lien to secure that debt, binding the interests of those who united in it, but the account of the commissioner should show of what that debt really consisted—that is to say, what part of it was for debts contracted by the testator, and what part by the widow, and to the extent that it represents a debt contracted by the testator or by his widow, the executor should be credited in his accounts with its payment. The accounts should also show what part of it represents the personal debts of Cary Breckinridge, the executor, or George W. Breckinridge, and to the extent that it found that the private debts of Cary or George W. Breckinridge entered into, and have

been paid or are to be paid out of the share of Mrs. Breckinridge, one of the grantors, she, as between herself and her brothers, should be treated as a surety, and be reimbursed by them; but in so far as the Figgat debt is composed of debts due by the testator or widow, it is to be considered as a debt of the estate, and the executor credited accordingly, if he has paid it, or any part of it.

It appears probable from the exceptions, and from the account of the executor, that his private debts and those of his brother have, to some extent, been allowed him as credit. If such there be, they, of course, should be stricken out. A bond, note, or account may on its face appear to be the personal debt of the executor, or of George W. Breckinridge, or of some other person, and may yet, in truth and in fact, be the debt of the estate. If such be the case, the executor, upon its payment, should have credit for it; but, if upon the evidence it appears to be in truth and in fact not the debt of the testator, and not a debt contracted by the widow under circumstances as above stated, then the executor should not be so credited. The presumption, of course, is that all accounts made and all notes given which on their face charge Cary Breckinridge, Jr., or George W. Breckinridge, or any person other than the testator, as being the debtor, are, in the absence of evidence to the contrary, to be considered as the debts of those who, upon the face of the note or account, appear as the debtors, and in such case, the burden of proof would be upon the executor to establish his right to the credit. But these are matters of detail, and our purpose now is merely to declare the principles upon which we think the account should ultimately be settled, and which, we believe, will not be found difficult of application.

There is a claim on the part of the wife of Cary Breckinridge, Jr., which is to be considered. After the death of the testator, certain moneys belonging to the wife of the executor were used in payment of the debts of the estate. The decree complained

of allows this claim for money thus advanced to the estate and directs that it be paid out of the amount found due by the testator to the executor. So long as the claim asserted by Mrs. Virginia C. Breckinridge, wife of Colonel Cary Breckinridge, is less than the sum which he is entitled to recover from the estate, it does not appear to be a matter of concern to the other devisees and legatees of Cary Breckinridge, Sr. If they are to pay it, it is of no moment to them whether it is to be paid to Colonel Breckinridge, or to his wife. For the present, therefore, the determination of her rights is reserved.

If, upon the settlement of the accounts of the executor when this case is again before the commissioner, the amount due the executor shall be found insufficient to satisfy the claim of Mrs. Virginia C. Breckinridge, the commissioner will then inquire and report upon her right to recover, in the light of the evidence in the record, and of such as may be adduced before him in the contingency mentioned.

For these reasons the decree of the Circuit Court is reversed, and the cause remanded to be further proceeded with in accordance with the principles herein annnounced.

*Reversed.*